UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| FRANCINE L. MCCALL, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 4:18-CV-01951-NCC |
| ANDREW M. SAUL,[1] | ) ) ) |
| Commissioner of Social Security | ) ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Francine L. McCall ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* Plaintiff, proceeding *pro se*, has filed a brief and associated medical records that the Court has liberally construed to be a brief in support of her complaint (Doc. 18). Defendant responded with a brief in support of the answer (Doc. 26). Therefore, this matter is fully briefed and ready for disposition. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 9). For the following reasons, the decision of the Commissioner will be **AFFIRMED**, and Plaintiff's Complaint will be **DISMISSED**, with prejudice.

---

[1] Andrew M. Saul is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul shall be substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I. PROCEDURAL HISTORY**

Plaintiff filed her application for DIB on November 14, 2016 (Tr. 250-53). Relevant to the current briefing, Plaintiff's onset date was subsequently amended from September 1, 1992, the date proposed by Plaintiff on her application, to June 30, 2000 (Tr. 255-56). Plaintiff was initially denied on February 3, 2017, and she filed a Request for Hearing before an Administrative Law Judge ("ALJ") (Tr. 165-72). After a hearing on October 5, 2017 and a supplemental hearing on March 27, 2018, by decision dated May 7, 2018, the ALJ found Plaintiff not disabled (Tr. 15-42). On September 12, 2018, the Appeals Council denied Plaintiff's request for review (Tr. 1-7). As such, the ALJ's decision stands as the final decision of the Commissioner.

**II. DECISION OF THE ALJ**

The ALJ determined that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2005, and that she did not engage in substantial gainful activity during the period from her alleged onset date of June 30, 2000 through her date last insured of December 31, 2005 (Tr. 20). The ALJ found Plaintiff has the severe impairments of osteoarthritis of the knees, degenerative disc disease, fibromyalgia, major depressive disorder and posttraumatic stress disorder ("PTSD"), but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 20-21). After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform light work[2] with the

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all

following limitations (Tr. 22). Plaintiff could occasionally climb ramps and stairs but never ladders, ropes and scaffolds; occasionally balance, stoop, kneel, crouch and crawl; she should avoid concentrated exposure to extreme cold, vibration, heights and hazards; she could have occasional contact with coworkers, supervisors and the general public; and she could engage in no tasks requiring a high level of sustained attention (*Id.*). The ALJ found Plaintiff unable to perform any past relevant work through the date last insured but that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform including marking clerk, routing clerk, and photocopy machine operator (Tr. 36-37). Thus, the ALJ concluded that a finding of "not disabled" was appropriate (Tr. 38). Plaintiff appeals, arguing a lack of substantial evidence to support the Commissioner's decision.

### III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may

---

of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 416.967(b), 404.1567.

be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate

RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Id.* Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

## IV. DISCUSSION

In her appeal of the Commissioner's decision, Plaintiff raises a number of discrete issues and directs the Court's attention to various medical records but does not raise any specific legal arguments. In an abundance of caution, the Court has conducted a complete review of the ALJ's determination and addressed each issue raised by Plaintiff in its analysis. Having conducted a full and thorough review of the briefing, the record, and the ALJ's decision, for the following

reasons, the Court finds that Plaintiff's arguments are without merit, and that the ALJ's decision is based on substantial evidence and is consistent with the Regulations and case law.

**A. Alleged Onset Date**

First, the Court will address Plaintiff's repeated assertion that her alleged onset date is properly March 1, 1998, the day of her honorable retirement from the Air Force, not June 30, 2000 as indicated in the record (*See, e.g.,* Doc. 21 at 2, 8). In a DIB claim, the alleged onset date is "the date the claimant alleges he or she became unable to work because of his or her medical condition." Social Security Administration ("SSA"), Program Operations Manual System ("POMS"), DI 25501.210.[3] When non-medical factors, including work, prohibit a disability examiner from establishing the date of onset as the one proposed by a claimant, the Field Office will propose a potential onset date. *Id.* The potential onset date is the earliest possible date that the adjudicator can use to establish the onset date based on non-medical factors. POMS DI 25501.220. *See also Porter v. Berryhill*, No. 5:17-CV-05028-VLD, 2018 WL 2138661, at *37 (D.S.D. May 9, 2018) (detailing the import of a potential onset date in a Title II claim).

On her November 14, 2016 DIB application, Plaintiff alleged an onset date of September 1, 1992 (Tr. 250-53). On January 23, 2017, an "Amendments to Application" was filed indicating a change to the date on which she was unable to work because of her disabling condition to June 30, 2000 (Tr. 255). Specifically, the form reads: "I wish to change the following information on my application for [benefits] . . . I became unable to work because of my disabling condition on June 30, 2000" (*Id.*). A reason for the change is not indicated (*Id.*). At the end of the document is an affirmation which includes the following statement, "I affirm

---

[3] "Although POMS guidelines do not have legal force, and do not bind the Commissioner, this court has instructed that an ALJ should consider the POMS guidelines." *Shontos v. Barnhart*, 328 F.3d 418, 424 (8th Cir. 2003) (referencing *Berger v. Apfel*, 200 F.3d 1157, 1161 (8th Cir. 2000); *List v. Apfel*, 169 F.3d 1148, 1150 (8th Cir. 1999)).

6

that all information I have given in connection with this claim is true" (Tr. 256). Under the attestation is a telephone number and the telephone number on the form matches the one provided by Plaintiff to the Court (*Id.*). However, it appears that this document was created and processed at the Field Office especially in light of a "Report of SGA Determination" also created on January 23, 2017, indicating that "potential onset to consider is [Alleged Onset Date] 6/30/00" (Tr. 296). Plaintiff raised an issue regarding her alleged onset date before the ALJ at the October 5, 2017 hearing (Tr. 54). Plaintiff told the ALJ, "Actually, I don't understand the alleged onset date, but mine actually started in '92 in the Gulf War, when I came from the Gulf War, but they said that was from the last time I had had a job or something" (Tr. 52). The ALJ explained, "You can't be disabled under Social Security if you're working full time, even if you had some medical issues" (*Id.*). Plaintiff appears to have acknowledged an understanding of the ALJ's explanation (Tr. 52-55). In her decision, the ALJ indicated that the alleged onset date was June 30, 2000 and found that Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date through her date last insured (Tr. 18, 20).

      The ALJ's decision regarding Plaintiff's alleged onset date is supported by substantial evidence. Plaintiff engaged in substantial gainful activity from her initial alleged onset date in 1992 through June 30, 2000. A Summary of Plaintiff's earnings for the years 1992 to 2000 indicates significant earnings during this period (Tr. 263). Plaintiff was employed by the United States Air Force until 1998 and then by Citi Financial Auto LTD in 1999 and 2000 (Tr. 267-68). Further, Plaintiff indicated on her disability report that she stopped work as a creditor on June 30, 2000 (Tr. 304). In this position, Plaintiff reported that she earned $32,000 per year (*Id.*). *See* SSA POMS DI 10501.015 (indicating the monthly income threshold by year). A person cannot

be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. § 404.1520(b).

**B. Evaluation of Plaintiff's Subjective Complaints**

Prior to addressing the ALJ's RFC determination, the Court will first address the consistency of Plaintiff's complaints with the record as the ALJ's evaluation of Plaintiff's symptoms was essential to the determination of other issues, including Plaintiff's RFC.[4] *See Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005)). In assessing a claimant's credibility, the ALJ must consider: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003). *See also Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010); *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). For the following reasons, the Court finds that

---

[4] Social Security Ruling 16-3p eliminated the term "credibility" from the analysis of subjective complaints. However, the regulations remain unchanged; "Our regulations on evaluating symptoms are unchanged." SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529, 416.929.

the reasons offered by the ALJ in support of her analysis of Plaintiff's subjective complaints are based on substantial evidence.

First, the ALJ found Plaintiff's statements concerning the intensity, persistence and limiting effects of her alleged symptoms not entirely consistent with the medical evidence (Tr. 23). Specifically, the ALJ determined that Plaintiff "has not generally received the type of medical treatment one would expect for a totally disabled individual" (Tr. 34). The ALJ noted, "[t]hough [Plaintiff] was treating with multiple doctors, her follow up was sporadic," Plaintiff "cancelled or failed to show up for doctor appointments on a number of occasions", and that "treatment has been essentially routine and/or conservative in nature" (*Id.*). The ALJ conducted a thorough nearly twelve full page review of the medical evidence. An ALJ may determine that subjective complaints are not credible in light of objective medical evidence to the contrary. *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006). Indeed, upon review of the record, the Court finds Plaintiff's treatment to be sporadic and conservative in nature. For example, a March 7, 2001 note indicates, Plaintiff "finally showed up today" after an apparent referral and missed appointment in January of that year (Tr. 1026, 1034-37). During the encounter, the psychiatrist noted, "[s]he refused referral to the psychologist because of her experiences in [C]olorado where 'the psychologist wrote things that she did not say and only found out from the psychiatrist'" (Tr. 1027). In fact, there were several significant gaps in Plaintiff's psychiatric care. For example, an October 24, 2003 note indicates that Plaintiff had not been seen by psychiatry since May of 2002 (Tr. 1094-99). *See also* Tr. 1307-08 (returning to psychiatric care in January 2002 after approximately four-month hiatus). Similarly, Plaintiff failed to appear for her medical appointments addressing her physical symptoms and impairments. *See* Tr. 1193 ("This patient failed to show for today's scheduled physical therapy appoint. Pt will be given 2

weeks to reschedule, otherwise pt. will be discharged from physical therapy at that time."); 1306 ("Since last seen she has missed/cancelled several appointments."). An ALJ may properly consider Plaintiff's conservative and limited treatment history in his determination of a plaintiff's credibility. *Kamann v. Colvin*, 721 F.3d 945, 950-51 (8th Cir. 2012) (noting that the ALJ properly considered that the claimant was seen "relatively infrequently for his impairments despite his allegations of disabling symptoms"); *Casey v. Astrue*, 503 F.3d 687, 693 (8th Cir. 2007) (noting that the claimant sought treatment "far less frequently than one would expect based on the [symptoms] that [he] alleged").

Second, the ALJ also found that while Plaintiff has been prescribed and has taken appropriate medications for the alleged impairments, "medical records reveal that the medications have been relatively effective in controlling [Plaintiff's] symptoms" (Tr. 34). The record is full of instances where Plaintiff responded well to medication and medication management. For example, on May 23, 2002, the psychiatrist reported that while Plaintiff had run out of her medication after not seeking a follow up appointment, Plaintiff's mood was improved with calmer, brighter affect (Tr. 1151). The psychiatrist prescribed Plaintiff Wellbutrin to help Plaintiff stop smoking and renewed Plaintiff's sertraline and valium "for now with plan to eventually taper both if possible" (*Id.*). *See also* Tr. 587 (noted "dramatic improvement" within 10 minutes of bilateral knee injection). "If an impairment can be controlled by treatment or medication, it cannot be considered disabling." *See Wildman*, 596 F.3d at 965 (quoting *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004)). *See also cf. Singh v. Apfel*, 222 F.3d 448, 453 (8th Cir. 2000) (repeated and consistent doctor visits coupled with many diagnostic tests, taking numerous prescription medications and use of many pain treatment modalities supported claimant's subjective complaints of pain).

Third, the ALJ indicated that Plaintiff's "medical records are replete with instances of non-compliance regarding her appointments, medications, treatment, diets and the instructions given by her physicians (particularly regarding following up, taking medication as prescribed, smoking cessation, losing weight through diet and exercise and seeking psychotherapy)" (Tr. 34). The medical record supports the ALJ's assessment. For example, Plaintiff frequently failed to appear for her physical therapy appointments. In addition to the appointment noted above, on February 5, 2003, Plaintiff again failed to show for her physical therapy appointment (Tr. 530). Similarly, Plaintiff failed to take medication as prescribed; an August 14, 2004 treatment note indicates that Plaintiff did not take a medication as prescribed after it caused some side effects and never picked up another prescribed medication (Tr. 1086-87). The record also indicates Plaintiff's continued issues with smoking cessation despite being counseled otherwise (Tr. 1046). *See also* Tr. 493-94 (detailing Plaintiff's tobacco use history). The ALJ may consider a failure to follow a course of treatment in determining whether a claimant may receive benefits. 20 C.F.R. §§ 404.1530, 416.930 (individual who fails to follow prescribed treatment without a good reason will not be found disabled). *See also Wright v. Colvin*, 789 F.3d 847, 854 (8th Cir. 2015) (affirming where ALJ found that claimant's "credibility suffered from his refusal to take pain medication and his refusal to seek out even conservative treatments such as physical therapy"); *Wildman*, 596 F.3d at 966 (noncompliance is a basis for discrediting a claimant; when claimant was compliant with dietary recommendations his pain was under good control; claimant's noncompliance with a diet regimen prescribed by doctor contributed to a negative credibility determination).

Fourth, the ALJ found "[t]he description of the symptoms and limitations which the claimant has provided throughout the record has generally been inconsistent and unpersuasive"

11

(Tr. 34). Specifically, the ALJ noted that while Plaintiff "repeatedly noted cognitive limitations and memory problems, the record did not support such problems" (*Id.*). For example, Plaintiff underwent psychological and cognitive testing on October 4, 2002 (Tr. 532-40). Results from the testing were generally normal (*Id.*). In fact, the psychologist noted, "Neuropsychological test result indicate that [Plaintiff] has a number of cognitive strengths" (Tr. 417, 539). While the testing did identify problems in Plaintiff's working memory and ability to complete visuospatial tasks, the psychologist suggested some generalized coping mechanisms to address these issues and that Plaintiff "has significantly impairing somatic complaints and depression" (Tr. 539-40). Further, the ALJ highlighted an encounter with a psychiatrist in which Plaintiff told him that she had not slept for days but the doctor noted that she was surprisingly alert and not at all cognitively impaired for an individual claiming not to have slept for eight days (Tr. 34, 1123). *See Julin v. Colvin,* 826 F.3d 1082, 1087-88 (8th Cir. 2016) (discussing evidence in the record "from which the ALJ could infer [the plaintiff's] claims were overstated or not entirely reliable").

Finally, while the ALJ did not explicitly address Plaintiff's activities of daily living in relation to her evaluation of Plaintiff's subjective complaints, it is clear from the opinion that the ALJ found Plaintiff's performance of certain tasks to be inconsistent with Plaintiff's reports regarding the intensity, persistence and limiting effects of her symptoms (Tr. 21, 34). *See Vance v. Berryhill*, 860 F.3d 1114, 1121 (8th Cir. 2017) ("[t]he inconsistency between [the claimant's] subjective complaints and evidence regarding her activities of daily living also raised legitimate concerns about her credibility."). As a preliminary matter, the ALJ noted that Plaintiff failed to submit a function report detailing her physical and mental limitations (Tr. 23). Plaintiff, however, testified that she attended college between 2000 and 2005 while raising her six children

12

(Tr. 23, 62). Indeed, Plaintiff testified that she successfully earned a Bachelor of Business Administration during the relevant time period (Tr. 34, 62). Further, Plaintiff reported several times that she was working towards a Master's in Business Administration (Tr. 34). For example, in an addendum from October 2, 2002, a physician notes, "Actually, she has made quite a bit of progress but complains of difficulty in statistics class at school. She is in MBA program" (Tr. 1193). The ALJ may properly discredit Plaintiff's subjective complaints based on her ability to graduate from college and pursue a master's degree during the relevant time period. *Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997) (finding substantial evidence supported the ALJ's credibility determination because, in part, of plaintiff's "academic achievements"; *Thurn v. Apfel*, 994 F. Supp. 1156, 1168 (W.D. Mo. 1998) (finding "the fact plaintiff is able to maintain passing grades while attending college full time is strong evidence that he is not disabled.").

In conclusion, the Court finds the ALJ evaluation of Plaintiff's subjective complaints is based on substantial evidence and is consistent with Regulations and case law.

## C. RFC Determination

Regulations define RFC as "what [the claimant] can do" despite his "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." *Lauer v. Apfel*, 245 F.3d 700, 703 (8th Cir. 2001). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney*, 228 F.3d at 863). *See also Myers v. Colvin*, 721 F.3d 521, 526 (8th Cir. 2013). To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent

of the claimant's impairments to determining the kind of work the claimant can still do despite his or her impairments. *Anderson v. Shalala*, 51 F.3d. 777, 779 (8th Cir. 1995). "Although it is the ALJ's responsibility to determine the claimant's RFC, the burden is on the claimant to establish his or her RFC." *Buford v. Colvin*, 824 F.3d 793, 796 (8th Cir. 2016) (internal citations omitted).

The Eighth Circuit clarified in *Lauer* that "[s]ome medical evidence . . . must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace[.]" 245 F.3d at 704 (quoting *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam) and *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000)). Thus, an ALJ is "required to consider at least some supporting evidence from a professional." *Id. See also Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010) ("The ALJ bears the primary responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC."); *Eichelberger*, 390 F.3d at 591.

As previously discussed, the ALJ determined Plaintiff has the RFC to perform light work with the following limitations (Tr. 22). Plaintiff could occasionally climb ramps and stairs but never ladders, ropes and scaffolds; occasionally balance, stoop, kneel, crouch and crawl; she should avoid concentrated exposure to extreme cold, vibration, heights and hazards; she could have occasional contact with coworkers, supervisors and the general public; and she could engage in no tasks requiring a high level of sustained attention (Id.).

The Court finds the ALJ's RFC determination is based on substantial evidence. Specifically, as addressed in significant detail above, the ALJ properly evaluated Plaintiff's subjective complaints. In doing so, the ALJ conducted a complete and detailed analysis of

Plaintiff's medical record and activities of daily living. The ALJ also addressed the opinion evidence of record.

First, the ALJ properly considered the opinions of two state agency consultants, Dr. Martin Isenberg, Ph.D. ("Dr. Isenberg"), a psychological consultant, and Dr. Nancy Ceaser, M.D. ("Dr. Ceaser"), a medical consultant (Tr. 35, 158-62). Dr. Isenberg found, as noted by the ALJ, Plaintiff's mental impairments were not severe and indicated that Plaintiff has mild limitations in understanding, remembering and applying information, interacting with others, maintaining concentration, persistence or pace, and adapting or managing oneself (Tr. 35, 158-59). The ALJ afforded the opinion "some weight" because "additional medical evidence received at the hearing level better supported" the ALJ's findings (Tr. 35). Indeed, the ALJ found Plaintiff's RFC to be more limiting than as suggested by Dr. Isenberg (Tr. 22). Specifically, the ALJ found Plaintiff to have the following nonexertional limitations: Plaintiff could have occasional contact with coworkers, supervisors and the general public and could engage in no tasks requiring a high level of sustained attention (*Id.*). The ALJ afforded the opinion of Dr. Ceaser "substantial evidentiary weight," in light of his/her status as a "qualified expert in evaluating medical issues in Social Security disability claims" (Tr. 35). Dr. Ceaser found Plaintiff capable of the light exertional level of work with some limitations (Tr. 35, 159-62). Specifically, Dr. Ceaser determined that Plaintiff could only occasionally climb ramps and stairs but never ladders, ropes and scaffolds; could only occasionally balance, kneel, stoop, or crawl; and should avoid concentrated exposure to extreme cold, noise, wetness, vibration ad hazards (Tr. 35, 161-62). The ALJ properly found Dr. Ceaser's opinion "generally consistent with the record as a whole" (Tr. 35).

Second, the ALJ correctly noted the absence of restrictions placed on Plaintiff by her treating physicians. Specifically, the ALJ stated: "Given the [Plaintiff's] allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on the [Plaintiff] by the treating doctor [but] a review of the record in this case reveals no restrictions recommended by any treating doctor" (Tr. 35). The Court's own review similarly uncovered that no treating physicians had recommended any long term restrictions or limitations. An ALJ may properly rely on the absence of medical restrictions in her evaluation of Plaintiff's limitations. *Bryant v. Colvin*, 861 F.3d 779, 784 (8th Cir. 2017) ("[T]he ALJ rightfully noted the lack of any medical provider making allowances for any disability in Bryant's care.").

Third, the ALJ considered the testimony of Dr. Joseph Carver, Ph.D. ("Dr. Carver"), a clinical psychologist and the medical expert at the March 27, 2018 Supplemental Hearing (Tr. 35, 107-08, 116). Dr. Carver testified that Plaintiff had the impairments of depression, anxiety, and PTSD (Tr. 35, 116-17). Dr. Carver opined that none of Plaintiff's impairments met or equaled any listing and that Plaintiff has no impairment in understanding, remembering and applying information; moderate social functioning impairment; mild impairment in her ability to maintain concentration, persistence or pace; and no impairment in adapting and managing oneself (Tr. 36, 119-21). In support of his findings, Dr. Carver indicated that Plaintiff's medications had been unchanged for 15 years, that MRIs of Plaintiff's brain were normal, and that, when offered psychotherapy, Plaintiff declined (Tr. 35, 117, 119, 620). *See* Tr. 413 ("Patient reported to Dr. Brenner during initial presentation that she had previously had 5 MRI's [sic] in the military (see neurology note dated October 31, 2001). However, a recent MRI W/O CONT was ordered due to chronic symptoms. MRI results dated 4/12/02 . . . indicated normal

16

findings.") (internal emphasis omitted). Dr. Carver further testified that Plaintiff's regular medication management and medication regimen afford her the ability to function within these stated limitations (Tr. 36, 121, 124). The ALJ afforded Dr. Carver's opinion "substantial evidentiary weight," finding his opinion to be consistent with the record as a whole (Tr. 36). As addressed in more detail above, the Court concurs as Plaintiff's sporadic treatment history indicates that her impairments are largely controlled with medication and medication management. The ALJ was permitted to rely upon the opinion of the non-examining medical expert to the extent it was consistent with other reliable evidence. *Tuggle v. Comm'r of Soc. Sec. Admin.*, No. 2:18-CV-04107-NKL, 2019 WL 1980702, at *3 (W.D. Mo. May 3, 2019) (citing *Turpin v. Colvin*, 750 F.3d 989, 993-4 (8th Cir. 2014)).

In addition to the medical opinion evidence of record, the ALJ also properly considered Plaintiff's VA disability rating. The VA determined that Plaintiff was eligible for disability benefits, finding her rated at 100% for a service-connected disability (Tr. 254, 499-500). An ALJ must consider the VA's finding of disability. *Morrison v. Apfel*, 146 F.3d 625, 628 (8th Cir. 1998). However, "the ALJ is not bound by the disability rating of another agency when he is evaluating whether the claimant is disabled for purposes of social security benefits[.]" *Pelkey v. Barnhart*, 433 F.3d 575, 579 (8th Cir. 2006) (citing 20 C.F.R. § 404.1504; *Fisher v. Shalala*, 41 F.3d 1261, 1262 (8th Cir. 1994) (per curiam) ("There is no support for [the claimant's] contention that his sixty-percent service-connected disability rating equates with an inability to engage in any substantial gainful activity under social security standards.")). In this case, the ALJ specifically mentioned the disability rating (Tr. 24). In addition, "an ALJ gives proper consideration to a VA disability determination if she considers and discusses the underlying medical evidence contained in the VA's Rating Decision." *Rael v. Soc. Sec. Admin.*, No.

8:07CV432, 2008 WL 4279707, *14 (D. Neb. Sept.16, 2008) (internal quotation omitted). *See also Pelkey,* 433 F.3d at 579-80 ("the ALJ did not err because he fully considered the evidence underlying the VA's final conclusion that Pelkey was ... disabled"). Indeed, here, the ALJ considered and discussed the medical evidence underlying the VA's disability determination (*See* Tr. 23-34, 350-638, 654-1339). Thus, the ALJ gave proper consideration to the VA disability determination.

To the extent Plaintiff identifies records that support Plaintiff's allegations, "[i]f substantial evidence supports the decision, then we may not reverse, even if inconsistent conclusions may be drawn from the evidence and even if we may have reached a different outcome." *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).

In conclusion, the Court finds that the ALJ's RFC determination is consistent with the relevant evidence of record including the objective medical evidence, the observations of medical providers, and diagnostic test results, as well as the evaluation of Plaintiff's subjective complaints.

**D. Vocational Expert Testimony**

Finally, the Court finds that the ALJ's determination that Plaintiff could perform other jobs in the national economy to be supported by substantial evidence. As addressed in more detail above, the Court finds the ALJ's RFC determination to be supported by substantial evidence. Further, the hypothetical which the ALJ posed to the VE captured the concrete consequences of Plaintiff's limitations and included all of Plaintiff's impairments as supported by substantial evidence in the record (*See* Tr. 137-53). An ALJ is required to include only a claimant's credible limitations in her hypothetical to the Vocational Expert. *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) ("The ALJ's hypothetical question to the vocational expert

needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole.") (quoting *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006)); *Wildman*, 596 F.3d at 969 ("[T]he ALJ was not obligated to include limitations from opinions he properly disregarded."); *Guilliams v. Barnhart*, 393 F.3d 789, 804 (8th Cir. 2005) (holding that a proper hypothetical sets forth impairments supported by substantial evidence and accepted as true by the ALJ); *Gilbert v. Apfel*, 175 F.3d 602, 604 (8th Cir. 1999) ("In posing hypothetical questions to a vocational expert, an ALJ must include all impairments he finds supported by the administrative record."). Because there was work which Plaintiff could perform, based on the testimony of the VE and her independent review of the DOT, the ALJ found Plaintiff was not disabled. *Martise*, 641 F.3d at 927 ("Based on our previous conclusion ... that 'the ALJ's findings of [the claimant's] RFC are supported by substantial evidence,' we hold that '[t]he hypothetical question was therefore proper, and the VE's answer constituted substantial evidence supporting the Commissioner's denial of benefits.'") (quoting *Lacroix*, 465 F.3d at 889). As such, the court finds that the ALJ posed a proper hypothetical to the VE; that the ALJ properly relied on the VE's testimony that there was work existing in significant numbers which Plaintiff could perform; and that the ALJ's finding that Plaintiff is not disabled is based on substantial evidence and is consistent with the Regulations and case law.

## V. CONCLUSION

For the reasons set forth above, the Court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED**, with prejudice.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 19th day of March, 2020.

                                          /s/ Noelle C. Collins
                                        NOELLE C. COLLINS
                                        UNITED STATES MAGISTRATE JUDGE